| .CARTER, C.J.
This appeal arises from a trial court judgment upholding a fine assessed by the Louisiana Department of Health and Hospitals (DHH) against Maison Deville of Harvey, L.L.C. (Maison Deville) for violations of the minimum licensure standards for nursing homes. The question presented in this appeal regards whether DHH Secretary David Hood had the authority to review a recommendation by an Administrative Law Judge despite such review occurring after the 10-day limit set forth in LSA-R.S. 49:959. Secretary Hood’s findings are not challenged. Maison Deville only argues that the findings of the administrative law judge should be reinstated.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On September 26, 1998, as Hurricane Georges threatened to make landfall near the New Orleans metropolitan area, the Maison Deville nursing home prepared to evacuate its residents in response to the evacuation order issued by civil authorities. Maison Deville, which did not have an emergency preparedness plan that had been reviewed and approved by the Jefferson Parish Office of Emergency Preparedness, evacuated its residents by chartering buses to bring them to a shelter in Baton' Rouge. During the evacuation procedure, Ms. Annis McDonald, a Maison Deville resident, died.
*729 The commercial bus on which the residents were placed was not equipped with any specialized equipment to accommodate the medical conditions of some of the residents. The only food items brought along on the bus were water, cookies, and snacks, which were placed on the bottom bay of the bus. However, Ms. McDonald was on a diet of pureed meat, chopped food, health shakes, and pudding. Ms. McDonald and the other residents were placed in upright positions on the bus, while mattresses were loaded into the bottom bay, along with the food.
Because of the massive traffic problems associated with the evacuation of the New Orleans area, the trip from Harvey to Baton Rouge took approximately 8 hours, ■with another couple hours spent on the bus as the evacuation shelter was prepared for the residents’ stay. Although the bus was equipped with an air conditioning system, the system only worked well when the bus was moving. By the time the bus arrived in Baton Rouge, and the residents were unloaded, Ms. McDonald was dead.
|3In September and October of 1998, DHH evaluated Maison Deville’s evacuation efforts. This evaluation led to a notice issued January 20, 1999, wherein DHH found that Maison Deville had violated Section 9713 and Section 9729 of the Nursing Home — Minimum Licensure Standards, LAC 48:1, subpart 3, Chapter 97.[2] DHH assesses Maison Deville with a Class B violation and civil penalty of $1,500.00.[3] Maison Deville appealed DHH’s assessment of the fine.
The appeal was heard before Administrative Law Judge Michael E. Distefano on May 10,1999. In an undated Appeal Decision, Judge Distefano recommended that he found no violation of Section 9713 by Maison Deville and that the fíne be reduced from $1,500.00 for a Class B violation to $1,000.00 for a Class C violation of Section 9729. On May 28, 1999, the DHH Director of the Bureau of Appeals sent a letter to the attorneys for Maison Deville indicating the recommended decision of the hearing officer was adopted as the final decision of the department. Counsel for Maison Deville received the letter on June 1,1999.
DHH Bureau of Legal Services was informed of the hearing officer’s recommendation by letter delivered June 8, 1999. On June 15, 1999, Legal Services filed a petition for Rehearing, Reopening or Re *730 consideration with DHH Secretary David Hood. Maison Deville opposed DHH’s petition as untimely since it was not filed within U10 days from the alleged date of entry of Judge Distefano’s decision as required by LSA-R.S. 49:959. However, the record does not contain the date of entry of Administrative Law Judge Distefano’s decision.
By Review and Order dated July 13, 1999, Secretary Hood rejected Judge Distefano’s recommendation and concluded that Maison Deville violated Section 9713 and that a Class B violation was warranted. Maison Deville filed a Petition for Judicial Review on August 5, 1999. A hearing was conducted before the district court on January 10, 2000, following which the court for oral reasons assigned affirmed the decision of the Secretary of DHH. A judgment to that effect was signed on January 25, 2000. On March 21, 2000, the trial court signed written reasons for judgment upholding the order of Secretary Hood. Maison Deville appeals.
In its only assignment of error, Maison Deville alleges that the trial court erred as a matter of law by failing to address and/or reject DHH’s Petition for Rehearing, Reopening or Reconsideration because it was not filed within 10 days from the date of entry of Judge Distefano’s decision, as required by LSA-R.S. 49:959. Accordingly, Maison Deville urges that the decision of the administrative law judge should be reinstated.
DISCUSSION
Maison Deville argues that the date of entry of the administrative law judge’s decision was May 28, 1999, which was the day notification was mailed to the parties.
Louisiana Revised Statute 49:959 provides in pertinent part:
A decision or order in a case of adjudication shall be subject to the rehearing, reopening, or reconsideration by the agency, within ten days from the date of its entry.
Based on our review of the record, there is no way to determine what was the date of entry of Judge Distefano’s recommendation. Under these facts, it is inherently unfair to hold DHH to a time limit of 10 days, which would have run before DHH even received notification of the decision. Under the circumstances of this case, we find that because DHH Legal Services was not apprised of the recommendation of Administrative Law Judge Distefano until June 8, 1999, that its petition to reopen the matter filed with Secretary Hood on June 15, 1999 was timely. Accordingly, the | ¿judgment of the trial court is affirmed. All costs of this appeal are assessed to Maison Deville of Harvey, L.L.C.
AFFIRMED.

. Section 9713 provides, "A nursing home shall be administered in a manner that promotes the highest level of functioning and well-being of each resident.”
Section 9729 provides, in pertinent part: "A. The nursing home shall have an emergency preparedness plan (which conforms to the Office of Emergency Preparedness model plan) designed to manage the consequences of natural disasters or other emergencies that disrupt the nursing home’s ability to provide care and treatment or threaten the lives or safety of the nursing home residents.... D. The nursing home’s plan shall be received and approved by the parish Office of Emergency Preparedness, utilizing appropriate community-wide resources.”

. There are several classes of violations/penalties. A Class B violation is defined in Section 9745, LAC 48:1, subpart 97, as ”[T]hose violations which create a condition or occurrence relating to the operation and maintenance of a nursing home which create a substantial probability that death or serious physical harm to a resident will result from the violation.”
A Class C violation is defined in Section 9745, LAC 48:1, subpart 97, as, "[C]onduct, acts or omissions which do not result in death or serious physical harm to a resident or the substantial probability thereof but create a condition or occurrence relating to the operation and maintenance of a nursing home that create a potential for harm by directly threatening the health, safety, rights, or welfare of a resident.”